UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| James Paul Aery, | Case No. 21-cv-2373 (JRT/DTS) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Unknown Beltrami County Deputies and City of Bemidji Police, Individual and Official Capacities, | |
| Defendants. | |

Plaintiff James Paul Aery, a prisoner, was convicted in 2015 on drug charges in state court. *See State of Minnesota v. Aery*, No. 04-CR-15-2474 (Minn. Dist. Ct.). Aery alleges that he was ordered to forfeit $9,800 in cash that was found with him at the time of his arrest. Aery later brought an action in state conciliation court seeking to recover the seized money, but he was told by the state court that he "was found in possession of . . . drugs and ha[d] no right to the money in [his] possession as [a] result." Compl. at 1 [Dkt. No. 1]. Aery now brings this action under 42 U.S.C. § 1983 seeking recovery of the $9,800, along with an additional $1,970,200 in interest and an injunction requiring law-enforcement officials to stay 500 feet away from him at all times.

As an initial matter, Aery did not pay the filing fee for this action, instead applying for *in forma pauperis* (IFP) status. *See* Docket No. 3. Because Aery is a prisoner, his IFP application is subject to the requirements of 28 U.S.C. § 1915(b). This statute provides that:

> (1) Notwithstanding subsection (a), if a prisoner brings a civil action . . . in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee. The court shall assess and,

1

> when funds exist, collect, as a partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of —
>
>> (A) the average monthly deposits to the prisoner's account; or
>>
>> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint . . . .
>
> (2) After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.
>
> (3) In no event shall the filing fee collected exceed the amount of fees permitted by statute for the commencement of a civil action . . . .
>
> (4) In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.

According to this statute—which is part of the Prison Litigation Reform Act of 1995 (PLRA)—prisoners who are granted IFP status are *not* excused from paying the court filing fee altogether, as is the case for non-prisoner IFP litigants. Instead, a prisoner who is granted IFP status is merely granted permission to pay the filing fee in installments, rather than paying the entire amount in advance. *Ashley v. Dilworth*, 147 F.3d 715, 716 (8th Cir. 1998) ("The purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time."). Section 1915(b)(1) requires prisoner IFP applicants to pay an initial partial filing fee at the

outset of the case, and § 1915(b)(2) requires that the remaining balance be paid in installments through regular deductions from the prisoner's trust account.

In this case, the financial information submitted by Aery in conjunction with his IFP application demonstrates that he has no assets and no means from which to pay an initial partial filing fee in this matter. Accordingly, that requirement will be waived. *See* 28 U.S.C. § 1915(b)(4). Nevertheless, Aery remains responsible for the $350.00 statutory filing fee for this case, which must be paid in installments over time, with prison or jail officials deducting funds from Aery's facility trust account in accordance with § 1915(b)(2).

The PLRA also requires the Court to conduct a substantive review of Aery's pleading. *See* 28 U.S.C. § 1915A(a) ("The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint —
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b). Although the factual allegations in a complaint need not be detailed to state a claim on which relief may be granted, the allegations must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In addition, the complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing the sufficiency of the complaint, the court may disregard legal conclusions that are couched as factual allegations. *See Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 679 (2009).  Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced.  *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

Aery expressly invokes § 1983 as the source of recovery in this action.[1]  This Court interprets the complaint as potentially raising two distinguishable claims for relief under § 1983.

First, the complaint might be interpreted as challenging the *seizure* of the cash by law-enforcement officials — that is, the initial dispossessing of the cash from Aery upon arrest.  "To establish a violation of the Fourth Amendment in a section 1983 action, the claimant must demonstrate a seizure occurred and the seizure was unreasonable."  *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir. 2003).  Aery does not challenge in his complaint that he was found in possession of an illegal substance and that the money at issue was found on or near him at the time of his arrest.  *See* Compl. at 1-2.  Under Minnesota law, all money found in proximity to controlled substance is presumed to be subject to administrative forfeiture, *see* Minn. Stat. § 609.5314, subd. 1, and seizures of cash by law-enforcement officials in reliance on that statute have been found to be reasonable, *see Kulm v. Wilkening*, No. 15-2000 (DWF/FLN), 2016 WL 7423390, at *4 (D. Minn. Dec. 22, 2016).  The seizure described in this matter appears on its face

---

[1] Aery also refers to 21 U.S.C. § 881, but that statute—which lists the property forfeitable to the federal government as a result of drug offenses and sets forth the procedures by which the federal forfeiture proceedings are to occur—is not applicable to this matter.

to have been reasonable, and, at a minimum, Aery has not pleaded specific allegations[2] that, if proved true, would establish that the seizure was unreasonable in his case.[3]

Second, the complaint might be interpreted as challenging the legality of the procedures by which the money came to be *forfeited*—that is, Aery may be claiming that the state-law forfeiture procedures due not afford litigants such as him due process of law. But the only defendants named to this action are the (unnamed) law-enforcement officials who effected the arrest of Aery and the seizure of the cash, not the officials responsible for the alleged due-process violation. A litigant bringing claims under § 1983 must plead facts that, if proved true, would establish that the defendant named to the action, himself or herself, is responsible for the alleged violation of law. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights."). The complaint in this matter fails to do this. Moreover, Aery does not specify how he believes the state-court procedures established by statutes such as § 609.5314 fall below the constitutional

---

[2] Aery leans upon the fact that he was convicted only of possessing controlled substances and not of selling controlled substances, but the reasonableness of the seizure must be judged based upon the vantage point of the official effecting the seizure at the time the seizure is made, not in hindsight. *See, e.g.*, *United States v. Williams*, 929 F.3d 539, 544 (8th Cir. 2019). There is no reason from the complaint to believe that the officers who effected the seizure had reason to know that a subsequent investigation would fail to uncover evidence that Aery had been involved in the dealing of a controlled substance (assuming this allegation to be true).

[3] Aery alleges that the arrest and seizure at issue took place in August 2016, *see* Compl. at 1, but the relevant state-court documents suggest that the complaint could not have taken place any later than August 2015, when the state-court conciliation proceedings to which the complaint refers were commenced, *see Aery v. 1992 Oldsmobile Cutlass and $9,189 Cash Currency*, No. 04-CO-15-145 (Minn. Dist. Ct.). If it is correct that the seizure took place in or before August 2015, then it is likely that Aery's Fourth Amendment claim is also barred by the six-year statute of limitations for bringing § 1983 claims in Minnesota. *See United States v. Bailey*, 700 F.3d 1149, 1153 (8th Cir. 2012).

standard. Without further elucidation of the claim by Aery, this Court cannot determine how, exactly, he believes his due-process rights to have been violated.

Finally, although it is not clear that he is in fact seeking relief from his state-court conviction in this lawsuit, Aery also suggests that his conviction is unlawful because he believes that he was coerced into confessing to drug possession. See Compl. at 3 ("The only reason I pled guilty is because no money in jail."). Insofar as Aery is seeking to challenge the validity of his conviction, he may not do so through a non-habeas civil action,[4] see Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), and it would now almost certainly be too late for Aery to seek habeas relief from his conviction, see 28 U.S.C. § 2244(d). Aery cannot use federal civil litigation as a backdoor attempt to challenge his past convictions.

In short, this Court concludes that Aery has failed to state a claim on which relief may be granted. Accordingly, it is recommended that this matter be dismissed without prejudice under § 1915A(b).

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, this Court RECOMMENDS THAT:

1. This matter be DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1915A.

2. The application to proceed in forma pauperis of plaintiff James Paul Aery [Docket No. 3] be DENIED.

---

[4] This Court notes that another conviction of Aery on drug charges was overturned by the Minnesota Court of Appeals, see State v. Aery, No. A19-1845, 2020 WL 7134872 (Minn. Ct. App. Dec. 7, 2020), but this is a separate conviction from the one at issue in this matter, which by all indications remains facially valid.

3. Aery be ordered to pay the unpaid balance ($350.00) of the statutory filing fee for this action in the manner prescribed by 28 U.S.C. § 1915(b)(2), and the Clerk of Court be directed to provide notice of this requirement to the authorities at the institution where Aery is confined.

Dated: November 23, 2021                    ___s/David T. Schultz_____
                                            DAVID T. SCHULTZ
                                            U.S. Magistrate Judge

**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).